*This opinion is subject to revision before final publication in the Pacific Reporter*

**2026 UT 17**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

In the Matter of the Discipline of J. ELLE COX

OFFICE OF PROFESSIONAL CONDUCT,
*Appellee,*

*v.*

J. ELLE COX,
*Appellant.*

No. 20241089
Heard November 3, 2025
Filed July 16, 2026*

On Direct Appeal

Third District Court, Salt Lake County
The Honorable Coral Sanchez
The Honorable Teresa L. Welch
No. 210905636

Attorneys:

Christine T. Greenwood, Michelle R. Daniels, Salt Lake City,
for appellee

J. Elle Cox, Las Vegas, Nev., self-represented appellant

ASSOCIATE CHIEF JUSTICE POHLMAN authored the opinion of the
Court, in which JUSTICE PETERSEN, JUSTICE NIELSEN, JUDGE TENNEY,
and JUDGE MABEY joined.

---

* As of January 31, 2026, "The Supreme Court consists of seven justices." UTAH CODE § 78A-3-101(1). Pursuant to Utah Supreme Court Standing Order No. 18, this court sat and rendered judgment in this matter as a division of five justices.

Due to his retirement, JUSTICE PEARCE did not participate herein; DISTRICT COURT JUDGE JENNIFER A. MABEY sat.

Before this case was decided, CHIEF JUSTICE DURRANT recused himself from this case and JUSTICE HAGEN stepped down from the court. JUSTICE NIELSEN and COURT OF APPEALS JUDGE RYAN D. TENNEY, having reviewed the briefs and listened to a recording of the oral argument, substituted for CHIEF JUSTICE DURRANT and JUSTICE HAGEN and participated fully in this decision.

JUSTICE JORGENSEN and JUSTICE DENT became members of the Court after oral argument in this matter and did not participate.

––––––––––––

ASSOCIATE CHIEF JUSTICE POHLMAN, opinion of the Court:

## INTRODUCTION

¶1    The Office of Professional Conduct (OPC) prosecuted Utah-licensed attorney J. Elle Cox for lawyer misconduct in connection with her representation of a client before an immigration court in California. After a trial, the district court determined that Cox violated rules 1.1 (competence) and 1.3 (diligence) of the Utah Rules of Professional Conduct. It also found that the client was harmed, and it sanctioned Cox with a six-month suspension and probation conditions. Cox now appeals, raising a multitude of arguments.

¶2    As explained below, we reverse the district court's decision on rule 1.1 on the basis that Cox did not receive the required notice of the charge before her administrative hearing. But we affirm the court's decision that Cox violated rule 1.3. And although we strike two terms from the district court's sanctions order, we conclude that a six-month suspension is the appropriate sanction.

## BACKGROUND[1]

¶3    Cox has been licensed to practice law in Utah since 1999. The present attorney disciplinary matter arose from her representation of a client (Client) in a matter before the San Diego

––––––––––––

[1] We recite the facts consistent with the district court's findings.

Immigration Court in 2018 and 2019.[2] Cox was able to represent Client in the immigration court by virtue of her Utah bar license. *See* 8 C.F.R. §§ 1001.1(f), 1292.1(a)(1).

### A. The Immigration Matter

¶4 Client is a native citizen of another country who entered the United States on a K-1 fiancée visa when she married a U.S. citizen in 2011. After Client's conditional residence was terminated in 2015 due to her divorce, a Notice to Appear was filed in the immigration court, charging Client with being removable. Client paid $1,000 to retain Cox to represent her in the removal proceedings.

¶5 Cox first sought to adjust Client's immigration status by filing a motion to terminate the removal proceedings in May 2018. But the immigration court denied the motion. The court observed that the motion lacked the parties' requisite agreement and that Cox had not cited any authority that would have allowed the court to grant the motion under those circumstances.

¶6 Next, Cox filed papers indicating that Client wished to adjust her status based upon her marriage to a different U.S. citizen. The immigration court set an individual hearing for March 12, 2019,[3] and ordered that all applications for relief be filed by January 14, 2019, or be deemed abandoned.

¶7 On October 16, 2018, Cox prematurely moved for an extension to file Client's application for relief. Cox explained that she had mistakenly calendared October 23 as the deadline, that she needed more time to pay the filing fee, and that she would file the complete application by November 15. Citing Cox's mistake as to

---

[2] Immigration courts are administrative courts that are run by the Executive Office for Immigration Review, an agency within the United States Department of Justice. *See About the Office*, EXEC. OFF. FOR IMMIGR. REV. (May 29, 2025), https://www.justice.gov/eoir/about-office.

[3] Individual hearings in immigration court proceedings typically occur after a noncitizen has been advised of charges at a prior hearing. *See generally Zhang v. Gonzales*, 432 F.3d 339, 346 n.5 (5th Cir. 2005). During the individual hearing, the noncitizen and government counsel "are afforded an opportunity to argue the merits of the case," including the noncitizen's claims. *Id.*

the January 14 deadline, the court found the motion not ripe for decision.

¶8    Still, Cox did not file Client's application for relief by November 15, as she represented she would. Nor did she meet the January 14 deadline. Cox tried to file the application in person on January 14, but when she arrived at the filing window, she found the immigration court closed due to a partial shutdown of the federal government that began several weeks earlier.[4]

¶9    Cox later testified that she spoke about the closure with an on-site security guard who told her that although the immigration judges were not allowed to process any filings, the court was "accepting things by mail" and would "date stamp" the submissions. Cox, however, did not mail the application. She also neglected to file the application after the government shutdown ended eleven days later.

¶10 On March 7, Cox sent a letter to the court seeking a continuance of the March 12 hearing and detailing some difficulties she was experiencing in her personal life. Then, on March 8, although she had yet to file Client's underlying application, Cox filed an untimely pretrial brief. Finally, on March 12, Cox appeared at the time set for the individual hearing and attempted to file additional papers with the court.

¶11 In its written order dated March 13, 2019 (March Order), the immigration court described Cox's attempted filing as "disorganized" and noncompliant with the Immigration Court Practice Manual. It also explained that when "court personnel indicated that the filing was not proper and not acceptable," Cox "became combative and indicated that she was leaving the papers at the front counter. After discussing the matter with the court, the court personnel determined the appropriate action would be to leave the abandoned documents on counsel table in the courtroom for counsel to take." The immigration court further observed that, during the hearing itself, Cox couldn't provide "any further or

---

[4] The shutdown began on December 22, 2018, and ended on January 25, 2019. *See The Effects of the Partial Shutdown Ending in January 2019*, CONG. BUDGET OFF. (Jan. 28, 2019), https://www.cbo.gov/publication/54937. During the trial and in its findings, the district court mistakenly attributed the government shutdown to the COVID-19 pandemic.

coherent explanation for [her] failure to file that evidence by the deadline."

¶12 The immigration court ultimately found that an extension of time to file the applications was unwarranted and concluded that Client "abandoned her applications for relief by failing to file them by the deadline imposed by the court." The court also ordered that Client be removed from the United States on the charge contained in the Notice to Appear.

¶13 After receiving the order of removal, Client retained a new attorney (New Attorney) and paid her $8,000 to try to revive the immigration case. New Attorney filed a motion to reopen based on Cox's ineffective assistance, arguing that Cox inexplicably failed to timely file an application for adjustment of status, which New Attorney determined Client "was clearly eligible for." New Attorney eventually was able to remedy the problems created by Cox, and Client received a Permanent Resident Card. New Attorney also assisted Client in filing a complaint against Cox with the OPC.

### B. The OPC's Prosecution

¶14 In February 2020, the OPC sent Cox a notice of charges of professional misconduct. Because the full administrative record of the Ethics and Discipline Committee proceedings isn't part of the record on appeal, it is unclear what rule violations were included in the notice, and there is an unresolved dispute over which rule violations were part of the screening panel hearing. Cox avers that the screening panel considered charges under the Utah Rules of Professional Conduct for alleged violations of the following: rule 1.3 (diligence), rule 1.5 (fees), and rule 1.16 (termination). The OPC claims that it added a rule 1.1 (competence) charge after the original notice of charges was sent to Cox, and that it provided Cox notice of the additional charge at least fourteen days before the April 2021 screening panel hearing.[5]

¶15 After the screening panel hearing, the panel found probable cause to support violations of rule 1.1 (competence) and

---

[5] The OPC's claim that the rule 1.1 violation was added at least fourteen days before the screening panel hearing is based on the representation the OPC's counsel made during oral argument before this court.

rule 1.3 (diligence). The OPC then brought a complaint against Cox in state district court, charging her with violating both rules.

¶16  At trial, New Attorney and Cox testified. The OPC began by offering, as its first exhibit, New Attorney's motion to reopen the immigration case, which included as an attachment the immigration court's March Order. When Cox objected to the admission of the March Order on hearsay grounds, the OPC responded that it was not offering the March Order "for the truth of what's in the document," but only as "the attachment" New Attorney included "as part of her filing." The district court ultimately admitted the March Order with the limitation that it "is not offered for the truth of the matter asserted."

¶17  In addition to testifying about her filing of the motion to reopen, New Attorney testified about Cox's untimely filings. She explained that Cox's letter asking that the March 12 hearing be continued was not "the normal way that someone requests a continuance in immigration court." She explained that such a request "has to be in a motion form with time for the Government to respond, and it simply wasn't done correctly." And when asked about the effect of the partial shutdown of the federal government that prevented Cox's in-person filing of Client's papers on January 14, New Attorney testified that "there was a court closure, which did not prevent mail-in filings."

¶18  When given the opportunity to explain her failure to file Client's application for relief, Cox referred to the partial government shutdown and explained, "There's no map of how to handle a case where policies will change drastically and then nobody's available." She also testified about her filing of the pretrial brief, admitting it, too, was due on January 14. When asked about her letter seeking a continuance, Cox downplayed concerns about its format and untimeliness, stating that she "was not going to get [it]," "[n]o matter what the merits were." And when asked about the hearing on March 12, she described the immigration judge as "agitated" and "bombastic," and she conceded that the court did not accept as filed the papers she left at the courthouse. Cox also admitted that the court ordered Client deportable because Cox had failed to file the application for relief, but she claimed the judge's ruling was "disingenuous."

¶19  After the evidentiary presentations were complete, the district court concluded Cox had violated both rules 1.1 and 1.3.

¶20 First, the court decided that Cox violated rule 1.1 for failing to provide Client with competent representation before the immigration court. *See* UTAH R. PRO. CONDUCT 1.1 ("Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation . . . ."). It reasoned that Cox "failed to cite appropriate and required authority, . . . failed to submit evidence to support her request to continue the March 2019 hearing[,] . . . attempted to file disorganized papers that did not comply with" the court's manual, "left important papers on the clerk's table without ensuring that they would be filed," and "waited until the last day to file, when she knew of closures of the courts." And these shortcomings resulted in the immigration court declaring Client's application abandoned and designating Client "to be removed from the United States."

¶21 Second, the district court decided that Cox violated rule 1.3 for failing to "act with reasonable diligence and promptness in representing" Client before the immigration court. *See id.* R. 1.3. It reasoned that Cox failed to timely file Client's application for readjustment, failed to timely file Client's pretrial brief, and failed to obtain continuances promptly and diligently. It also found that Cox filed unnecessary documents because she incorrectly docketed events in her calendar.

¶22 The district court later held a separate sanctions hearing. In its written order, it reviewed Cox's rule violations and addressed Cox's mental state. Specifically, it found that Cox was "aware of the deadlines imposed by the Immigration Court and knew the consequences of not filing documents by their due dates" and still did not file for continuances. The court also found that Cox was "aware of her duty as an officer of the court," and it concluded that "Cox's mental state was knowing and not negligent where the failures were not isolated." Further, the court found that Client experienced "serious injury" from Cox's failings because the "strong potential of deportation . . . harmed [Client] emotionally" and she was "harmed financially as she had to retain the services of another lawyer to assist her in her visa application and prevent being removed from the United States."

¶23 Finally, the district court determined that suspension was the appropriate sanction for Cox's rule violations. To arrive at that determination, the court began by identifying suspension as the presumptive sanction under the rules. *See* SUP. CT. R. PRO. PRAC. 1-583(e)(1) (providing suspension as a presumptive sanction for a

rule 1.1 violation when the lawyer's conduct causes injury to a client); *id.* R. 1-583(d)(2) (providing the same for a rule 1.3 violation). Then, after finding the aggravating circumstances "more significant" when balanced against the mitigating circumstances, it decided not to deviate from the presumptive sanction.[6] *See id.* R. 1-588(a) ("After the presumptive sanction has been determined, aggravating and mitigating circumstances may be considered and weighed in deciding whether departure from the presumptive sanction is warranted.").[7]

¶24 Thus, the district court ordered Cox suspended from the practice of law for six months and one day, and it imposed, upon any reinstatement, a one-year probationary period. In addition, the court ordered Cox "to reimburse the Utah State Bar Fund for Client Protection any money that the Fund pays based upon its rules" and to "provide proof during the probationary period to the OPC and the Court that she is undergoing ongoing individual counselling."

¶25 Cox appeals.

## ANALYSIS

¶26 Cox presents a wide assortment of arguments attacking the district court's professional misconduct and sanctions orders. She combines those arguments into eight separate issues, several of which overlap and others of which contain multiple subparts. Ultimately, we do not reach the merits of every issue as a few are inadequately briefed and our resolution of some obviates the need to address others. Accordingly, rather than identify each issue and standard of review at the outset of this opinion, as is our usual practice, we identify each issue and any applicable standard of review as we reach it.

---

[6] The court found Cox's remorse to be a mitigating factor, but it found that Client was vulnerable, Cox had "substantial experience" practicing law, and Cox "engaged in a pattern of misconduct in the representation of [Client]." The court also noted that because no evidence showed that Cox refunded paid legal fees to Client, "[t]here was a lack of good faith effort to make restitution."

[7] We cite the current rules governing lawyer disciplinary proceedings and sanctions, which are in chapters 1 to 5 of the Supreme Court Rules of Professional Practice.

I. WE REVERSE COX'S RULE 1.1 VIOLATION BUT REJECT HER TWO OTHER FOUNDATIONAL ISSUES

¶27  We begin by addressing three foundational issues raised by Cox. First, Cox contends that the district court erred in rejecting her claim that it lacked subject matter jurisdiction over her disciplinary proceedings based on the OPC's purported failure to comply with rule 8.5(b)(1) of the Utah Rules of Professional Conduct. Second, Cox contends that the district court deprived her of due process. Third, Cox separately contends that because the rule 1.1 violation wasn't timely brought before the screening panel, it cannot be used as the basis for discipline against her and thus the district court erred in not dismissing it. To the extent we reach the merits of these legal questions, we review them for correctness. *See Pinder v. Duchesne Cnty. Sheriff*, 2020 UT 68, ¶ 30, 478 P.3d 610 (subject matter jurisdiction); *In re Adoption of K.T.B.*, 2020 UT 51, ¶ 15, 472 P.3d 843 (due process); *Nemelka v. Ethics & Discipline Comm. of the Utah Sup. Ct.*, 2009 UT 33, ¶ 9, 212 P.3d 525 (rule interpretation).

   A. *We Have Subject Matter Jurisdiction over Professional Misconduct Committed by Utah Attorneys Practicing in Other Jurisdictions*

¶28  First, before trial, Cox moved the district court to dismiss the OPC's disciplinary complaint against her for lack of subject matter jurisdiction. (Citing UTAH R. CIV. P. 12(b)(1).) Among other things, she claimed that rule 8.5(b)(1) of the Utah Rules of Professional Conduct requires the OPC to apply the professional conduct rules of the immigration court, and that because the OPC's complaint against her alleged violations of Utah's professional conduct rules, the court lacked jurisdiction over the complaint.

¶29  The district court denied Cox's motion to dismiss, concluding that it had subject matter jurisdiction over the OPC's disciplinary complaint. The court concluded that because Cox is licensed by the Utah State Bar, and because that license allowed her to practice before the immigration court, she is subject to Utah's disciplinary processes in Utah courts.[8]

---

[8] Judge Coral Sanchez presided over some of the pretrial proceedings in this matter and decided the motion to dismiss. Judge Teresa L. Welch presided over the remainder of the litigation, including the trial and the sanctions hearing.

¶30 On appeal, Cox argues that the district court erred in denying her motion, stating that its ruling "distorts [her] position." But in her opening brief, Cox doesn't explain how. Instead of engaging with the court's ruling and demonstrating how it may have misconstrued her position, she merely incorporates her briefing from the district court and leaves it to the OPC and this court to discern how the district court erred.

¶31 This is insufficient. Rule 24 of the Utah Rules of Appellate Procedure requires that a party "explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal." UTAH R. APP. P. 24(a)(8). Incorporating by reference arguments made in the district court does not satisfy this briefing requirement. As we explained in *In re Questar Gas Co.*, merely incorporating a party's prior briefing into an appellate filing "shift[s] the burden of research and argument to the reviewing court," and is inadequate under our rules. 2007 UT 79, ¶¶ 40, 43, 175 P.3d 545 (cleaned up). "[T]he development of an argument is a party's responsibility, not a judicial duty," and simply pointing to a twenty-page memorandum and asserting that the district court failed to understand it does not satisfy a party's burden to demonstrate error on appeal. *See Salt Lake City v. Kidd*, 2019 UT 4, ¶ 35, 435 P.3d 248.[9]

¶32 This shortcoming is particularly significant here because Cox's argument appears to be mis-framed. She argues that the district court should have dismissed the OPC's complaint for lack of subject matter jurisdiction. But we have "no doubt that the district court has subject-matter jurisdiction over disciplinary actions" and that Cox is subject to that authority. *Rose v. Off. of Pro. Conduct*, 2017 UT 50, ¶ 69, 424 P.3d 134 (cleaned up). Indeed, rule

---

[9] In its principal brief, the OPC challenged the adequacy of Cox's briefing based on a host of purported deficiencies, and it specifically objected to Cox's incorporation of her motion to dismiss by reference. Cox acknowledged her error in reply, retracted her incorporation by reference, and provided some analysis for her position. Although we appreciate Cox's acknowledgement, she cannot remedy her misstep by substantively briefing the issue for the first time on reply. "A reply brief is not a license to gap-fill missing arguments. The timely presentation of arguments is essential to providing an opposing party with a fair opportunity to respond." *Wittingham, LLC v. TNE Ltd. P'ship*, 2024 UT 23, ¶ 44 n.9, 554 P.3d 924 (cleaned up).

8.5(a) is clear, stating, in relevant part, "A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction, *regardless* of where the lawyer's conduct occurs." UTAH R. PRO. CONDUCT 8.5(a) (emphasis added); *see also* SUP. CT. R. PRO. PRAC. 1-504(a) ("The persons subject to the disciplinary jurisdiction of the Supreme Court and the OPC include any Lawyer licensed to practice law in Utah . . . ."). Thus, Cox presents no basis upon which we'd reverse the district court's denial of her rule 12(b)(1) motion to dismiss.

¶33 Further, rather than evidencing a jurisdictional problem, Cox's complaint appears to be rooted in a claim that the OPC erred in charging her under Utah's Rules of Professional Conduct rather than the immigration court's rules. As part of her argument, Cox makes passing reference to rule 8.5(b)(1) of the Utah Rules of Professional Conduct—a choice of law provision. It states: "In any exercise of the disciplinary authority of this jurisdiction, the rules of professional conduct to be applied shall be as follows: (b)(1) for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits, unless the rules of the tribunal provide otherwise . . . ."

¶34 Reading between the lines, it appears Cox believes that the OPC should have charged her under the immigration court's professional conduct rules. *See* 8 C.F.R. §§ 1003.101 to 1003.111. Those rules allow the immigration court to impose disciplinary sanctions against a practitioner, *id.* § 1003.101(a)–(b), for "conduct that constitutes ineffective assistance of counsel, as previously determined in a finding by . . . an immigration judge in an immigration proceeding," "fail[ure] to provide competent representation to a client," or "fail[ure] to act with reasonable diligence and promptness in representing a client," *id.* § 1003.102(k), (o), (q). Cox, however, never engages with rule 8.5(b)(1)'s terms, nor does she explain how it supports her claim that the district court lacked subject matter jurisdiction over the OPC's complaint.

¶35 To be sure, we are aware that other courts have interpreted analogues to Utah's rule 8.5(b)(1) and have concluded that charges filed by the state disciplinary authority arising out of conduct in an immigration court should have been brought under the immigration court's rules. *See In re Disciplinary Proceedings Against Luening*, 985 N.W.2d 773, 778 (Wis. 2023) (per curiam); *Att'y Grievance Comm'n of Md. v. Tatung*, 258 A.3d 234, 261 (Md. 2021). And the OPC must be mindful of this rule. But Cox has not engaged

in any analysis that leads to the conclusion that noncompliance with the rule, even if shown, would have deprived the district court of subject matter jurisdiction over the OPC's complaint.[10] We therefore affirm the district court's denial of her motion to dismiss.[11]

### B.  Cox Has Not Shown She Was Deprived of Due Process

¶36  Next, Cox complains that the district court violated her due process rights in a variety of ways. Specifically, she contends that the court violated the demands of due process by (1) relying on the March Order, which was not final and to which she was not a party; (2) failing to require a full agency record and denying a

---

[10] Our own limited exploration of the issue has revealed varied responses to challenges based on rule 8.5(b)(1) analogues, but we are unaware of a case where a court considered noncompliance with those rules to be a jurisdictional defect. *See, e.g.*, *In re Owens*, 341 A.3d 1151, 1159–61 (D.C. 2025) (rejecting a rule 8.5(b)(1) challenge for lack of prejudice because the court discerned no material difference between the relevant professional misconduct rules of the respective tribunals); *In re Luening*, 985 N.W.2d at 778 (relying on rule 8.5(b)(1) to dismiss state-based professional misconduct charges after concluding immigration court rules applied, but exercising jurisdiction to consider whether the choice-of-law challenge had been waived); *Tatung*, 258 A.3d at 261–62 (dismissing under rule 8.5(b)(1) what it characterized as "improperly charged" state rule violations, but limiting the precedential value of its decision and rejecting the argument that the error deprived the court of jurisdiction).

[11] We also reject Cox's challenge to the denial of her "related Motion for Judgment on the Pleadings." Once again, Cox neglects her burden on appeal by urging us to find error based on little more than the incorporation of her district court briefing. *See supra* ¶ 31 & n.9. Further, the remainder of Cox's argument is summed up in her singular assertion that "it would compromise an attorney's representation of a client if he/she had to conduct extra procedures (not required by the law or rules of the tribunal) and thereby disadvantage their client in that tribunal." Cox, however, not only fails to put this argument in the context of her motion, but she fails to defend its premise—that Utah's rules requiring a lawyer to act with reasonable diligence and competence compromised her representation of Client.

related motion to compel discovery; and (3) "failing to comply with" rule 8.5(b)(1) of the Utah Rules of Professional Conduct and denying Cox's related motions under rule 12 of the Utah Rules of Civil Procedure. We reject this challenge as inadequately briefed.

¶37 It is well established that "attorneys are entitled to due process when faced with professional discipline." *Rose*, 2017 UT 50, ¶ 84. In this setting, due process requires that an attorney "receive adequate notice of the charges and an opportunity to be heard in a meaningful way." *Long v. Ethics & Discipline Comm. of the Utah Sup. Ct.*, 2011 UT 32, ¶ 29, 256 P.3d 206 (cleaned up). And we have previously stated that the procedures listed in the lawyer discipline rules in chapter 1, article 5 of the Supreme Court Rules of Professional Practice are "sufficient to afford due process." *Rose*, 2017 UT 50, ¶ 84 (cleaned up).

¶38 Cox has not shown how her complaints about the district court's reliance on the March Order, its alleged failure to require a full agency record, its denial of discovery, or its denial of Cox's rule 12 motions violated her right to due process. To the extent Cox contends that the court erred in relying on certain evidence or in rejecting certain motions, Cox has either raised—or has had an opportunity to raise—those contentions in this appeal. And, as appropriate, they have been or will be addressed.[12] But Cox has not identified for our review a specific decision by the district court addressing an alleged due process violation, nor has she shown that she was not given adequate notice or that she lacked a

---

[12] Earlier, we addressed Cox's specific challenges to the district court's denial of her rule 12 motions to dismiss and for judgment on the pleadings. *See supra* Section I.A. And below we will address her specific challenge to the court's reliance on the March Order. *See infra* Part II. To the extent Cox believes the court erred in denying her discovery requests, she could have challenged those decisions on appeal by identifying the relevant ruling, demonstrating how the court abused its discretion, and showing prejudice. *See ClearOne, Inc. v. Revolabs, Inc.*, 2016 UT 16, ¶ 35, 369 P.3d 1269 (stating an appellate court will not interfere with a district court's denial of a discovery request absent a showing that the court abused its discretion and the appellant suffered prejudice as a result), *abrogated on other grounds by Raser Techs., Inc. ex rel. Hou. Phx. Grp. v. Morgan Stanley & Co.*, 2019 UT 44, 449 P.3d 150. But other than vaguely referencing her discovery requests as part of her due process argument, Cox has not challenged such a ruling.

meaningful opportunity to be heard on any one of the several issues she identifies as part of her due process claim. Accordingly, Cox's claim that the district court violated her due process rights fails. *See In re Discipline of Pendleton*, 2000 UT 77, ¶ 58, 11 P.3d 284 (rejecting attorney's due process challenge based on his "fail[ure] to cite any authority for the proposition that any of these events constituted a deprivation of due process" and because the court's "review indicates that he received all of the process that was due under the applicable rules").

### C. *We Reverse the Rule 1.1 Violation Because the Record Does Not Show Cox Received Notice of the Charge in Advance of or During the Screening Panel Hearing*

¶39 The third foundational issue is Cox's challenge to the district court's determination that she violated rule 1.1 of the Utah Rules of Professional Conduct for failing to provide Client with competent representation. Under this rule, a "lawyer shall provide competent representation," which "requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." UTAH R. PRO. CONDUCT 1.1. Cox contends that the court shouldn't have considered the rule 1.1 charge at all because the OPC did not provide timely notice of the alleged violation. Because there is no record evidence that the OPC timely charged Cox with a rule 1.1 violation, we reverse the district court's determination that Cox violated that rule.

¶40  Cox argues that we should reverse the rule 1.1 violation for incompetence because the OPC added the charge *after* her Ethics and Discipline Committee screening panel hearing. She raised this concern before the district court in a motion styled as a motion in limine, in which she asked that the rule 1.1 charge be dismissed or the supporting evidence be excluded from the trial. The OPC maintains that because Cox was charged with violating rule 1.1 "at the screening panel hearing," there was no error.

¶41 Our rules provide that before bringing a matter to a screening panel, the OPC must serve the responding lawyer "with a Notice identifying with particularity the possible violation(s) of the Rules of Professional Conduct . . . raised by the Complaint." SUP. CT. R. PRO. PRAC. 1-530(e)(1). Then, if the OPC determines after serving notice that the lawyer may have violated any additional rules, it must serve on the lawyer a summary identifying "with particularity all such additional alleged violations . . . at least 14 days before the hearing." *Id.* R. 1-531(b). And "[d]*uring* the

screening panel hearing, *but not after*, the panel may find that rule violations have occurred not previously charged by the OPC," and if so, the screening panel will give the lawyer "a reasonable opportunity to respond *during* the hearing." *Id.* R. 1-531(g) (emphases added).

¶42 The OPC does not assert that it has the authority to charge an attorney with a rule violation if that violation was not charged during the screening panel hearing. Instead, it recognizes that since it "must typically bring disciplinary complaints before a screening panel for a probable cause determination before filing an action in district court," *if* it had "unilaterally elected to charge" Cox with a rule 1.1 violation in district court without prior screening panel authorization, Cox's due process rights "arguably could have been violated." (Citing *id.* R. 1-536(a).)

¶43 The record shows that Cox admitted she was sent "a Notice of charges" in February 2020. It also shows that, after the conclusion of the hearing, the screening panel found that Cox violated rules 1.3 and 1.1. But the record does not contain the actual notice nor a transcript of the screening panel hearing. Instead, the only evidence in the record that shows what violations were charged *before* or considered *during* the hearing is Cox's sworn assertion that the screening panel considered charges for alleged violations of rules 1.3 (diligence), 1.5 (fees), and 1.16 (termination), but that she was not made aware of an alleged rule 1.1 (competence) violation until *after* the screening panel hearing. And as best we can tell, the OPC never rebutted that assertion.[13] Similarly, the district court deferred ruling on Cox's motion until trial, but the motion was never addressed.

¶44 We make these observations without judgment. A motion in limine arguably was not the best vehicle for Cox's request, and it does not appear that Cox alerted either the OPC or the court to the unresolved question during the trial. Yet, the OPC does not contend that Cox failed to properly preserve the issue in the district

---

[13] Before the district court, the OPC responded to Cox's sworn assertion and request for relief in its response to the several motions in limine Cox filed. The OPC did not directly challenge Cox's factual assertion but instead argued that her motion was "speculative and premature" and that she had not provided authority to preclude the OPC from offering evidence relevant to the rule 1.1 violation.

court, and it does not rebut with record evidence Cox's sworn assertion that she was not afforded an opportunity to respond to an alleged violation of rule 1.1 during the screening panel hearing.[14]

¶45 The OPC also does not assert that any procedural deficiency in this regard was cured by Cox's ability to challenge the alleged rule 1.1 violation in the district court. Instead, it concedes that Cox's due process rights could have been violated if rule 1.1 was not properly charged, and it defends against Cox's challenge only by insisting that the screening panel and the OPC complied with all applicable procedures. Under these circumstances, we accept Cox's unrebutted and unresolved assertion that she was not provided with timely notice of an alleged rule 1.1 violation and, for that reason, reverse the district court's determination that Cox violated that rule.[15]

## II. THE DISTRICT COURT'S DETERMINATION THAT COX VIOLATED RULE 1.3 WITHSTANDS HER CHALLENGES ON APPEAL

¶46 We turn now to Cox's challenges to the district court's conclusion that she violated rule 1.3 (diligence) of the Utah Rules of Professional Conduct. We understand her arguments to be contesting the sufficiency of the evidence. And because a district court's "findings of fact must be supported by sufficient evidence," *Utah State Bar v. Jardine*, 2012 UT 67, ¶ 46, 289 P.3d 516 (cleaned up), we may set them aside when they are not, *id.* ¶ 26.

---

[14] During oral argument before this court, counsel for the OPC represented that it timely provided Cox with notice of the alleged rule 1.1 violation. While we have no reason to doubt the veracity of counsel's representation, we cannot simply accept it as true when it is not supported by record evidence and is contradicted by Cox's unrebutted testimony. *See Wilderness Bldg. Sys., Inc. v. Chapman*, 699 P.2d 766, 768 (Utah 1985) ("[O]ur review is of course limited to the evidence contained in the record on appeal.").

[15] Because we reverse the district court's determination on rule 1.1, we need not address the remaining issues Cox raises to the extent they are tied to that rule, including Cox's claims that the court failed to "tether" its factual findings to its legal conclusions, that the court improperly relied on the March Order or New Attorney's testimony, and that the court made unreasonable factual inferences.

¶47 Rule 1.3 requires that an attorney "act with reasonable diligence and promptness in representing a client."[16] UTAH R. PRO. CONDUCT 1.3. This requirement is important because a "client's interests often can be adversely affected by the passage of time or the change of conditions," but "[e]ven when the client's interests are not affected in substance, . . . unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness." *Id.* R. 1.3 cmt. 3. Indeed, "[p]erhaps no professional shortcoming is more widely resented than procrastination." *Id.*

¶48 The district court reasoned that Cox didn't meet the diligence requirement because she failed (1) to timely file Client's application for readjustment and pretrial brief and (2) to obtain continuances promptly and diligently. It also determined that Cox violated rule 1.3 by (3) filing unnecessary documents because she incorrectly docketed events in her calendar.

¶49 We begin with Cox's challenge to the third lapse identified by the district court, which pertains to her October 16, 2018 motion to extend the immigration court's January 14, 2019 deadline. Cox filed the motion on October 16, which was within weeks of the October 23 deadline that she had wrongly calendared. In effect, far from procrastinating, Cox moved to extend a deadline that was still three months away. Her calendaring mistake thus led her to prematurely seek an extension and led the immigration court to deny the motion for lack of ripeness. Under these circumstances and because the motion didn't cause Cox to miss the actual deadline, we agree with her that it alone does not exhibit a lack of diligence.

---

[16] The immigration court expects the very same of attorneys appearing before it. 8 C.F.R. § 1003.102(q) (subjecting an attorney to discipline if the attorney "[f]ails to act with reasonable diligence and promptness in representing a client"). Like Utah's rule, the immigration court's diligence rule specifically instructs attorneys to manage their workloads "so that each matter can be handled competently." *Id.* § 1003.102(q)(1); UTAH R. PRO. CONDUCT 1.3 cmt. 2 ("A lawyer's work load must be controlled so that each matter can be handled competently."). The immigration court's rule also requires attorneys to "comply[] with all time and filing limitations." 8 C.F.R. § 1003.102(q)(2).

¶50  But the district court based the rule 1.3 violation on more. Primarily, it relied on Cox's failure to either timely file Client's application for readjustment of status or to promptly and diligently obtain a continuance.[17] Cox testified at trial that she intended in October to file Client's application for relief by November 15. But after finding out that she had until January to submit the application, she waited. And ultimately, Cox never filed the application—on time or otherwise. Indeed, she agrees in her reply brief that she "did not submit the Client's application to adjust status on or before January 14"—the filing deadline set in May 2018 by the immigration court.

¶51  Further, even though the governmental shutdown understandably prevented Cox from filing the application in person on January 14, she testified that she was told that the court was "accepting things by mail" and would "date stamp" the submissions. Still, Cox did not mail the application. And, when the shutdown ended eleven days later, she made no effort to file the application—or seek forgiveness for her late filing—even then. Instead, Cox waited until only days before the scheduled hearing (and weeks after the shutdown had ended) to send a letter to the court seeking a continuance. That continuance was not granted and still the application was not filed.

¶52  Cox's primary challenge to the district court's findings and its determination that she violated rule 1.3 is based on her complaint that the court improperly relied on the March Order, in which the immigration court concluded that Cox failed to meet the January 14 deadline and failed to offer a "coherent explanation" for her untimeliness. Cox contends that the March Order was hearsay, and that the district court relied on it for its truth despite representing that it was admitting the order only for the purpose of explaining why New Attorney took the actions she did.

¶53  Ultimately, we need not decide whether the district court erred in its reliance on the March Order because the court's findings are sufficiently supported by Cox's own testimony. Indeed, even were we to conclude that the court erred in relying on the order for

---

[17] The district court also referred to Cox's failure to timely file the pretrial brief before the March 2019 hearing. Cox complains that there was no admissible evidence to support this finding. But Cox herself testified that the brief was due on January 14 and that she didn't file the brief until March 8.

the truth of its contents, there is sufficient other evidence to support the court's determination that Cox failed to act diligently in representing Client.[18] *See supra* ¶¶ 18, 50–51.

¶54 Finally, we are sympathetic to Cox's position that her "late filings [were] justified" by a closure of the courts that complicated her ability to file on time. But only to a point. Where Cox was aware that Client's applications for relief would be deemed abandoned if not timely filed; where Cox had had several months to file Client's application for relief; where Cox claimed she would be prepared to file the application long before it was due; where Cox didn't mail the application despite being advised that the court was accepting filings; and where Cox didn't remedy the tardiness during the several weeks between the reopening of the courts and the time Client's applications for relief were deemed abandoned in mid-March; we agree with the district court that in representing Client, Cox failed to "act with reasonable diligence and promptness." *See* UTAH R. PRO. CONDUCT 1.3. Accordingly, we affirm the district court's decision that Cox violated rule 1.3.

III. WE AGREE THAT SUSPENSION IS THE APPROPRIATE SANCTION FOR COX'S VIOLATION OF RULE 1.3 AND DELIVER VARIED RESULTS ON COX'S REMAINING CHALLENGES TO THE SANCTIONS

¶55 Cox also challenges the district court's sanctions, ordering Cox suspended from the practice of law for six months and one day and, upon any reinstatement, requiring a one-year probationary period. In addition, the court required Cox "to reimburse the Utah State Bar Fund for Client Protection any money that the Fund pays based upon its rules," and it required Cox to "provide proof during the probationary period to the OPC and the Court that she is undergoing individual counselling."

---

[18] In a similar vein, Cox asserts that the district court impermissibly took judicial notice of the March Order in arriving at its findings of fact and conclusions of law. *See generally* UTAH R. EVID. 201 (allowing courts to take judicial notice of adjudicative facts). She also argues that the district court erroneously relied on New Attorney's testimony as a conduit for the March Order. Even if we were to agree with either contention, because Cox's own testimony supports the district court's findings, any such error is harmless.

¶56 As we address Cox's arguments about these sanctions in turn, we bear in mind that our disciplinary standards "permit [district courts] flexibility and creativity in assigning sanctions" because "it is a delicate and often difficult task to craft sanctions appropriate for individual attorneys, no two of which have engaged in the same misconduct under the same aggravating and mitigating circumstances." *In re Discipline of Crawley*, 2007 UT 44, ¶ 22, 164 P.3d 1232 (cleaned up).

¶57 Yet, "given our unique position regarding attorney discipline, we make an independent determination as to the correctness of the level of discipline actually imposed," *Rose v. Off. of Pro. Conduct*, 2017 UT 50, ¶ 61, 424 P.3d 134 (cleaned up), recognizing that "the ultimate responsibility for proportionality in discipline cases rests with this court," *Ciardi v. Off. of Pro. Conduct*, 2016 UT 36, ¶ 13, 379 P.3d 1287; *see also Rose*, 2017 UT 50, ¶ 60 (describing this court's constitutional and plenary authority to govern the practice of law, including the discipline of attorneys). We further recognize that our independent assessment is particularly important here where we reversed one of the two rule violations determined by the district court. *See In re Discipline of Steffensen*, 2018 UT 53, ¶ 45, 428 P.3d 1104 ("[I]n determining the appropriate sanctions . . . , only the two remaining violations should be considered.").

### A. We Strike the District Court's Finding that Cox Violated Her Duty to the Legal System

¶58 Cox begins by challenging the district court's finding in its sanctions order that she violated her duty to "the legal system." She contends that because rule 1.3 isn't listed under the rule governing sanctions "associated with an attorney violating his/her duty to the legal system," any related sanction should be reversed. We agree.[19]

¶59 Our lawyer disciplinary rules set forth presumptive sanctions for an attorney's violation of their duties owed to the legal system. Sup. Ct. R. Pro. Prac. 1-585. That rule comes into play when a lawyer's conduct is "prejudicial to the administration of justice or involves dishonesty, fraud, deceit, or misrepresentation to a court in violation of Rules 1.2(d), 3.3, or 4.1," *id.* R. 1-585(a), if a lawyer abuses the legal process by violating rules 3.1, 3.2, 3.4, 3.6,

---

[19] Cox made the same argument about rule 1.1. Because we reversed the district court's order relative to rule 1.1, *see supra* ¶ 45 & n.15, we consider this argument only relative to rule 1.3.

3.9, 4.4, 8.4(e), or 8.4(f), *id.* R. 1-585(b), or if a lawyer engages in improper communications in violation of rules 3.5, 4.2, or 4.3, *id.* R. 1-585(c).

¶60 Cox is correct that rule 1.3 is not part of rule 1-585's list. *See id.* R. 1-585. Moreover, the OPC did not allege that Cox's charged conduct involved dishonesty, fraud, deceit, misrepresentation, abuse of process, or improper communications. We therefore strike the district court's finding in its sanctions order that Cox violated her duty to the legal system.

### B. *We Agree that Suspension Is the Appropriate Sanction*

¶61 Cox next challenges the district court's suspension order, arguing that the court erred in finding that her failure to timely file Client's application for relief was knowing.

¶62 In deciding on suspension as the appropriate sanction, the district court made several relevant findings. It found that Cox's mental state was knowing because she was "aware of the deadlines imposed by the Immigration Court and knew the consequences of not filing documents by their due dates." It also found that Cox's conduct led to "serious injury to [Client] as there was strong potential of deportation" and emotional and financial harm. And the knowing nature of Cox's failings was important to the court's decision. It then found the aggravating circumstances "more significant" when balanced against the mitigating circumstances.

¶63 Cox contends that the district court erred in finding that she was aware of the January 14, 2019 deadline because the March Order was "the only source for this information" and was "not submitted for the truth of the matter." She claims that without this erroneous determination, the discipline imposed on her "would be much lighter."

¶64 Because we have upheld the district court's decision that Cox violated rule 1.3, we look to the presumptive sanction for a lawyer's failure to act with reasonable diligence. That presumption is that "[d]elicensure or suspension is generally appropriate when a Lawyer engages in a substantial pattern of neglect or knowingly fails to perform significant services for a client and thereby causes injury to a client. The appropriate sanction will depend on the nature and significance of the services and the seriousness of the injury to the client." SUP. CT. R. PRO. PRAC. 1-583(d)(2). "[K]nowledge" under our rules means "the conscious awareness of the nature or attendant circumstances of the conduct but without

the conscious objective or purpose to accomplish a particular result." *Id.* R. 1-502(j).

¶65  Contrary to Cox's claim, the district court (and this court) need not rely on the March Order to find that Cox knew she missed the immigration court's deadlines. Cox, herself, testified about her awareness of the January 14 deadline. And Cox testified that she did not meet the deadline or attempt to file the application at any time after the court reopened. *See supra* ¶ 18. Further, given that Cox's motion to extend shows her awareness of impending deadlines, *see supra* ¶ 7, we agree with the district court that Cox's "mental state was knowing." We thus reject Cox's complaint about her suspension and adopt it as the appropriate sanction here.[20]

### C. *We Strike the Order Regarding the Client Protection Fund*

¶66  As part of her suspension, the district court ordered Cox "to reimburse the Utah State Bar Fund for Client Protection any money that the Fund pays based upon its rules." And as part of any probation, the court ordered Cox to file, when that probationary period has ended, a declaration stating that she has "fully reimbursed the Bar's Lawyers' Fund for Client Protection for any amounts paid on account of [her] conduct."

¶67 The Client Protection Fund (Fund) "is established to reimburse clients for losses caused by the dishonest conduct committed by lawyers admitted to practice in Utah." SUP. CT. R. PRO. PRAC. 4-902(a). And our rules require a lawyer "whose actions have caused payment of funds to a claimant from the Fund [to] reimburse the Fund for all monies paid out as a result of the lawyer's conduct." *Id.* R. 4-904(e). Cox requests reversal of the district court's orders relative to the Fund, contending that they are improper because "dishonest conduct was not an issue" in these

---

[20] As shown herein, Cox has raised challenges to the district court's determinations that she violated both rule 1.1 and rule 1.3. She did not, however, suggest that the order of suspension should be reconsidered if we were to dismiss one—but not both—of the violations. Still, because we independently determine the correctness of the discipline imposed, *see supra* ¶¶ 57, 65, we conclude that the suspension ordered is appropriate under the circumstances. Cox's lack of diligence laid the foundation for OPC's bar complaint and was the primary cause of the harm to Client.

proceedings and "the facts do not support a finding of dishonesty."[21]

¶68 The OPC argues that we should reject Cox's request for two reasons. First, it asserts that this is a "non-issue" because if the Fund only reimburses clients who are victims of attorney dishonesty, and if Cox has not engaged in dishonest conduct, "it is unlikely any of Ms. Cox's clients would be entitled to recover from the fund." Second, the OPC asserts that the order "merely reiterates a requirement to which Ms. Cox would already be subject and does not impose a separate sanction."

¶69 We agree with both parties to some extent. We agree with Cox that there was no evidence adduced at trial that her conduct involved dishonesty. And we agree with the OPC that the orders requiring reimbursement of the Fund under certain circumstances merely repeat a requirement already established by our rules. In other words, the Fund-related provisions in the court's orders were superfluous (because Cox is subject to the governing rules regardless) and lack specific applicability here (because Cox was not shown to be dishonest). Ultimately, because the inclusion of this requirement is unnecessary but arguably suggests that Cox was shown to be dishonest, we grant her request and strike the provisions of the district court's orders requiring reimbursement to the Fund.[22]

---

[21] The OPC asserts that this issue was not preserved for appeal. Although Cox did not raise the issue in the district court, because this requirement first appeared when it was included in the court's final order, we will not reject the issue as unpreserved. *See In re D.B.*, 2012 UT 65, ¶ 34, 289 P.3d 459 ("The general preservation rule does not apply . . . when the alleged error first arises in the lower court's final order or judgment and thus, leaves no opportunity for the party to object below or to bring issues to the attention of the trial court." (cleaned up)).

[22] Cox made another argument related to the Fund that we address to correct her misunderstanding about recoveries from the Fund. Namely, Cox suggests that the district court should not have allowed New Attorney to testify at trial because the Fund would, "at the end of the day, [be] providing funds to" New Attorney, giving New Attorney "a pecuniary interest in the outcome of the case." Contrary to Cox's assertion, the Fund does not grant New

(continued . . .)

*D. We Approve the Individual Counseling Condition*

¶70 Last, the district court's probation order included a condition that Cox "will provide proof during the probationary period . . . that she is undergoing ongoing individual counselling," presumably in response to the OPC's request that the court place conditions on probation so that Cox "gets the help she needs." Cox requests that we strike this condition because none of the court's findings or conclusions "speak[] to the issue or need for counseling."[23]

¶71 Our rules provide that a sanction order may require that a lawyer receive mental health counseling and treatment as part of the lawyer's probation. SUP. CT. R. PRO. PRAC. 1-581(g)(2)(G). In her letter requesting a continuance of the individual hearing date, Cox represented to the immigration court that her inability to meet the deadline was due, at least in part, to difficulties she was experiencing in her personal life. Under these circumstances, we do not agree with Cox that this requirement is unwarranted. Thus, we decline to strike this probation condition.

## CONCLUSION

¶72 We reverse the district court's determination that Cox violated rule 1.1 (competence) of the Utah Rules of Professional Conduct on the basis that Cox did not receive the required notice of the charge before her administrative hearing. We also strike two terms of the court's sanctions order, specifically the finding that Cox violated her duty to the legal system and the superfluous instruction that she comply with rules relating to the Client Protection Fund. But we affirm the court's determination that Cox violated rule 1.3 (diligence) in her representation of Client, and we conclude that suspension is the appropriate sanction and affirm the rest of the court's sanctions order.

---

Attorney with a pecuniary interest in the case because the Fund reimburses clients, not their attorneys. *See generally* SUP. CT. R. PRO. PRAC. 4-902.

[23] As with the Fund issue, the OPC notes that the counseling issue is unpreserved, but for the same reason, we again decline to apply our preservation rule. *Supra* ¶ 67 n.21.